UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ALLY BANK,

Plaintiff,

v.

THE CITY OF ROCHESTER,

Defendant.

---

**DECISION AND ORDER**

6:24-CV-06348 EAW

## INTRODUCTION

Plaintiff Ally Bank ("Ally Bank" or "Plaintiff") claims defendant The City of Rochester (the "City" or "Defendant") violated its constitutional civil rights under 42 U.S.C. § 1983, when it seized and held a vehicle financed by Ally Bank pursuant to a judicial search warrant. (Dkt. 1). Presently before the Court are the parties' cross-motions for summary judgment. (Dkt 31; Dkt. 32). For the reasons below, Ally Bank's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.

## BACKGROUND

### I. Procedural Background

Ally Bank commenced this action on May 31, 2024. (Dkt. 1). The complaint alleges the following causes of action: (1) 42 U.S.C. § 1983 (§ 1983) claim for deprivation of property by unreasonable seizure in violation of the Fourth Amendment; (2) § 1983 claim for deprivation of property without due process of law in violation of the Fourteenth

Amendment; (3) § 1983 claim for taking of property without just compensation in violation of the Fifth Amendment; and (4) claim for declaratory relief based on alleged constitutional violations. (*Id.*). On July 9, 2024, the City filed an answer (Dkt. 3), followed by an amended answer on July 23, 2024 (Dkt. 6).

On December 17, 2025, Ally Bank filed its motion for summary judgment. (Dkt. 31). On January 14, 2026, the City filed its cross-motion for summary judgment (Dkt. 32) and its response to Ally Bank's motion for summary judgment (Dkt. 33). On January 20, 2026, the City filed a corrected memorandum of law in support of its cross-motion. (Dkt. 34). On February 18, 2026, Ally Bank filed a combined reply in support of its motion for summary judgment and response to the City's cross-motion for summary judgment. (Dkt. 37). On March 4, 2026, the City filed its reply in support of its cross-motion for summary judgment. (Dkt. 38).

## II. <u>Factual Background</u>

The following facts are taken from Plaintiff's and Defendant's Rule 56 statements (Dkt. 31-2; Dkt. 32-20; Dkt. 33; Dkt. 37-1), and the exhibits submitted by the parties. Unless otherwise noted, these facts are undisputed.

Ally Bank is a Utah-chartered bank engaged in the business of taking assignments in retail installment contracts for vehicle purchases, servicing those contracts, and holding liens in vehicles to secure payment under those contracts. (Dkt. 31-2 at ¶ 1; Dkt. 33 at ¶ 1). The City is a municipality organized and existing under the laws of New York. (Dkt. 31-2 at ¶ 2; Dkt. 33 at ¶ 2).

**A. Ally Bank and the Vehicle**

The vehicle at issue is a 2018 GMC Terrain ("the vehicle"). (Dkt. 31-2 at ¶ 3; Dkt. 33 at ¶ 3). On or about May 17, 2023, Bob Johnson Chevrolet sold the vehicle to TJ McCullough-Boggs and Dionca Elaine Nelson pursuant to a retail installment contract requiring 75 monthly payments of approximately $720.87, beginning July 1, 2023. (Dkt. 31-2 at ¶ 4; Dkt. 33 at ¶ 4; Dkt. 31-3 at 8-12). On the same day as the purchase, the installment contract was assigned to Ally Bank. (Dkt. 31-2 at ¶ 5; Dkt. 33 at ¶ 5). Through the assignment, Ally Bank obtained a security interest and lien in the vehicle. (Dkt. 31-2 at ¶ 6; Dkt. 33 at ¶ 6). Before June 22, 2023, Ally Bank perfected its lien on the vehicle. (Dkt. 31-2 at ¶¶ 7-8, 11; Dkt. 33 at ¶¶ 7-8, 11)[1]. The buyers defaulted under the installment contract and Ally Bank alleges that under that contract, it was entitled to repossess the vehicle at all times (Dkt. 31-2 at ¶¶ 9-10), though the City denies that Ally Bank was so entitled with respect to the City's possession (Dkt. 33 at ¶ 10).

**B. The Criminal Investigation and Seizure**

During a seven-month narcotics-trafficking conspiracy investigation in the Rochester area, law enforcement observed the vehicle involved in criminal activity on multiple occasions. (Dkt. 32-20 at ¶ 1; Dkt. 37-1 at ¶ 1). The investigation, known as "Operation Blood Brother," was conducted by the Greater Rochester Area Narcotics Enforcement Task Force ("GRANET"), a joint federal and local law enforcement task

---

1 The City concedes this fact for purposes of the pending cross-motions only. (Dkt. 33 at ¶ 11).

force that included the Rochester Police Department ("RPD") and Homeland Security Investigations. (Dkt. 32-20 at ¶ 2; Dkt. 37-1 at ¶ 2).

On June 21, 2023, New York State Supreme Court Justice Charles A. Schiano issued a search warrant for the vehicle upon a finding of probable cause. (Dkt. 32-20 at ¶ 5; Dkt. 37-1 at ¶ 5; Dkt. 31-3 at 83-87). The warrant directed that the entire vehicle be searched and that property seized pursuant to the warrant be returned and delivered to the issuing court. (Dkt. 32-20 at ¶ 5; Dkt. 37-1 at ¶ 5).

On June 22, 2023, the vehicle was seized incident to an arrest for felony drug offenses and impounded pursuant to the warrant because GRANET had reason to believe it was involved in narcotics trafficking. (Dkt. 32-20 at ¶¶ 7, 13; Dkt. 37-1 at ¶¶ 7, 13). An RPD investigator drove the vehicle to the RPD impound facility, where officers executed the search warrant. (Dkt. 32-20 at ¶¶ 8, 12-13; Dkt. 37-1 at ¶¶ 8, 12-13). The vehicle was transported to the impound facility to facilitate execution of the search warrant. (Dkt. 32-20 at ¶¶ 8-9; Dkt. 37-1 at ¶¶ 8-9).

An RPD officer completed a tow report documenting the transfer of the vehicle to the impound facility (Dkt. 32-20 at ¶ 11; Dkt. 37-1 at ¶ 11), indicating that the reason for the tow was for felony drug arrest, arrests, and warrant/investigation, and checking the box for a hold on the vehicle for evidence or evidence processing (Dkt. 32-11). The tow report's designation of the vehicle as subject to an evidence hold required the impound facility to retain the vehicle until RPD provided further instructions authorizing its release. (Dkt. 32-20 at ¶ 15; Dkt. 37-1 at ¶ 15). The United States Attorney's Office also placed a hold on the vehicle. (Dkt. 32-20 at ¶ 14; Dkt. 37-1 at ¶ 14). The City's seizure and

impoundment of the vehicle followed its ordinary policies and procedures for vehicles seized under similar circumstances. (Dkt. 31-2 at ¶ 47; Dkt. 33 at ¶ 47; Dkt. 32-20 at ¶ 10; Dkt. 37-1 at ¶ 10).

### C. The City's Impoundment Policies and Notice to Ally Bank

RPD General Order 511 ("General Order 511") governs the City's vehicle towing, storage, seizure, and tow reports. (Dkt. 31-2 at ¶ 41; Dkt. 33 at ¶ 41; Dkt. 32-20 at ¶ 16; Dkt. 37-1 at ¶ 16; Dkt. 31-3 at 95-114). The vehicle was taken to the impound facility pursuant to that order. (Dkt. 32-20 at ¶ 19; Dkt. 37-1 at ¶ 19). General Order 511 contains no provision expressly affording vehicle owners or lienholders an opportunity for a hearing. (Dkt. 31-2 at ¶ 42; Dkt. 33 at ¶ 42). The City has no unwritten policy or practice concerning the detention of vehicles for evidence separate from General Order 511. (Dkt. 31-2 at ¶ 43; Dkt. 33 at ¶ 43).

Following a vehicle's arrival at the impound facility, the impound lot personnel enter information from the tow report into the impound database. (Dkt. 31-2 at ¶ 44; Dkt. 33 at ¶ 44; Dkt. 32-20 at ¶ 20; Dkt. 37-1 at ¶ 20). They also obtain information concerning the vehicle's titled owner, registered owner, and lienholders from the New York State Department of Motor Vehicles database known as eJustice. (Dkt. 32-20 at ¶ 21; Dkt. 37-1 at ¶ 21). The impound database generates notification letters to vehicle owners and lienholders, which impound staff send by certified mail. (Dkt. 32-20 at ¶ 22; Dkt. 37-1 at ¶ 22). The purpose of those letters is to notify recipients that RPD has possession of their vehicle. (Dkt. 32-20 at ¶ 22; Dkt. 37-1 at ¶ 22). Through DMV records, the City identified

Ally Bank as a lienholder of the vehicle. (Dkt. 31-2 at ¶ 18; Dkt. 33 at ¶ 18; Dkt. 32-20 at ¶ 24; Dkt. 37-1 at ¶ 24).

The same day as the seizure, the City sent Ally Bank a letter by certified mail notifying it that the vehicle had been impounded, was subject to a hold, and that Ally Bank would receive another letter when the hold was released. (Dkt. 32-20 at ¶ 25; Dkt. 37-1 at ¶ 25; Dkt. 31-3 at 16). Ally Bank received the notice letter on June 30, 2023. (Dkt. 32-20 at ¶ 27; Dkt. 37-1 at ¶ 27). The letter did not mention any opportunity to request a hearing for the vehicle. (Dkt. 31-2 at ¶ 21; Dkt. 33 at ¶ 21; Dkt. 32-20 at ¶ 28; Dkt. 37-1 at ¶ 28). The City did not arrange a hearing before a neutral decision-maker concerning the propriety of its continued impoundment of the vehicle. (Dkt. 31-2 at ¶ 23; Dkt. 33 at ¶ 23).

**D. Ally Bank's Efforts to Recover the Vehicle**

On July 7, 2023, Ally Bank's agent telephoned RPD to inquire about recovering the vehicle. (Dkt. 31-2 at ¶ 25; Dkt. 33 at ¶ 25). An individual identifying himself as RPD Officer McGraw informed the agent that the vehicle was subject to an evidence hold. (Dkt. 31-2 at ¶ 25; Dkt. 33 at ¶ 25). On August 4, 2023, Ally Bank's agent confirmed that the City continued to detain the vehicle and had provided no indication of when it would be released. (Dkt. 31-2 at ¶ 26; Dkt. 33 at ¶ 26).

On August 9, 2023, Ally Bank referred the matter to Meola Law Firm ("Meola Law") to pursue recovery of the vehicle. (Dkt. 31-2 at ¶ 27; Dkt. 33 at ¶ 27). Meola Law telephoned the City's impound facility on August 29, September 26, and October 17, 2023. Each time, the caller was placed on hold, and the call was not answered. (Dkt. 31-2 at ¶¶ 28-30; Dkt. 33 at ¶¶ 28-30).

On October 30, 2023, Meola Law sent a letter to the City's Corporation Counsel expressly demanding the vehicle's immediate release to Ally Bank. (Dkt. 31-2 at ¶ 31; Dkt. 33 at ¶ 31). On November 29, 2023, Meola Law called the Corporation Counsel's office and left a message requesting a return call. (Dkt. 31-2 at ¶ 32; Dkt. 33 at ¶ 32). On November 30, 2023, Geron Harris of that office called Meola Law and requested that the October 30 demand letter be emailed to him. (Dkt. 31-2 at ¶ 33; Dkt. 33 at ¶ 33). Meola Law emailed the letter that same day. (Dkt. 31-2 at ¶ 34; Dkt. 33 at ¶ 34). On December 1, 2023, then-Assistant Corporation Counsel Patrick Beath ("Beath") sent a letter directing that further inquiries concerning the vehicle's detention be addressed to RPD. (Dkt. 31-2 at ¶ 35; Dkt. 33 at ¶ 35). On December 6, 2023, Meola Law made several additional calls to the City's impound facility, including a call transferred by the City operator. (Dkt. 31-2 at ¶¶ 36-37; Dkt. 33 at ¶¶ 36-37). The calls were placed on hold and were not answered. (Dkt. 31-2 at ¶¶ 36-37; Dkt. 33 at ¶¶ 36-37). Meola Law sent another letter to Beath reiterating Ally Bank's demand for release of the vehicle on January 16, 2024. (Dkt. 31-2 at ¶ 38; Dkt. 33 at ¶ 38). The City did not respond to that letter. (Dkt. 31-2 at ¶ 39; Dkt. 33 at ¶ 39). From July 2023 through March 2025, the City provided Ally Bank with no additional information concerning the vehicle. (Dkt. 31-2 at ¶ 40; Dkt. 33 at ¶ 40).

**E. Administrative Tow-Hearing Procedures**

Rochester City Code § 111-72(H) ("§ 111-72(H)") establishes a procedure for requesting an administrative hearing concerning the legality of a vehicle tow (Dkt. 32-20 at ¶ 29), though Ally Bank contends that the provision only relates to vehicles towed in connection with parking-related issues (Dkt. 37-1 at ¶ 29). The City provides such hearings

through its Parking and Municipal Code Violations Bureau ("MCVB"). (Dkt. 32-20 at ¶ 30; Dkt. 37-1 at ¶ 30). Under § 111-72(H), an initial hearing should be scheduled within 48 hours after receipt of a hearing request. (Dkt. 32-20 at ¶ 37; Dkt. 37-1 at ¶ 37). The procedure permits the requesting party to present evidence and provides for a determination concerning whether probable cause supported the tow. (Dkt. 32-20 at ¶¶ 37-38, 45; Dkt. 37-1 at ¶¶ 37-38, 45; § 111-72(H)(3)-(4)). MCVB administrative law judges, who are City contract employees, preside over tow hearings and issue written decisions. (Dkt. 32-20 at ¶¶ 43-44; Dkt. 37-1 at ¶¶ 43-44). Under § 111-72(H)'s procedure, a person who disagrees with an administrative law judge's decision may appeal to the MCVB appeals board, whose determinations are subject to review under Article 78 of the New York Civil Practice Law and Rules. (Dkt. 32-20 at ¶ 45; Dkt. 37-1 at ¶ 45). Ally Bank does not dispute that § 111-72(H)'s policies and procedures exist, but disputes the applicability to vehicles seized incident to an arrest and retained as criminal evidence. (Dkt. 37-1 at ¶ 47). Ally Bank did not request a tow hearing before MCVB concerning the vehicle. (Dkt. 32-20 at ¶¶ 48-49; Dkt. 37-1 at ¶¶ 48-49).

### F. Continued Retention and Release of the Vehicle

The vehicle was held for evidentiary purposes in connection with GRANET's criminal investigation. (Dkt. 32-20 at ¶ 50; Dkt. 37-1 at ¶ 50). No fees are imposed on vehicles held as evidence, and although the City's initial notice contained a reference to payment of fees, the City did not charge Ally Bank any fees in connection with the vehicle. (Dkt. 32-20 at ¶¶ 51-52, 68; Dkt. 37-1 at ¶¶ 51-52, 68). Under General Order 511, GRANET could not release the evidence hold on the vehicle without authorization from

the Assistant United States Attorney assigned to the criminal matter. (Dkt. 32-20 at ¶ 53; Dkt. 37-1 at ¶ 53). In other words, GRANET could not unilaterally lift the hold. (Dkt. 32-20 at ¶¶ 53-54; Dkt. 37-1 at ¶¶ 53-54). As of October 9, 2024, the investigation implicating the vehicle remained ongoing and unresolved. (Dkt. 32-20 at ¶ 55; Dkt. 37-1 at ¶ 55; Dkt. 32-2).

About two years after the seizure, on April 14, 2025, the U.S. Attorney's Office released the evidentiary hold on the vehicle. (Dkt. 32-20 at ¶ 55; Dkt. 37-1 at ¶ 56). The City's ordinary procedure following release of an evidence hold is to recheck DMV records for changes in ownership or lienholder information and send letters notifying interested parties that the vehicle is available for retrieval. (Dkt. 32-20 at ¶¶ 58-59; Dkt. 37-1 at ¶¶ 58-59). Ally Bank was notified by letter dated April 14, 2025, and it repossessed the vehicle on May 6, 2025. (Dkt. 32-20 at ¶¶ 60, 62; Dkt. 37-1 at ¶¶ 60, 62).

Ally Bank recovered the vehicle without paying the City any fees. (Dkt. 31-2 at ¶ 50; Dkt. 33 at ¶ 50; Dkt. 32-20 at ¶ 68; Dkt. 37-1 at ¶ 68). The City did not compensate Ally Bank for its possession of the vehicle. (Dkt. 31-2 at ¶ 50; Dkt. 33 at ¶ 50).

**G. The Vehicle's Sale and Ally Bank's Claimed Damages**

Following recovery of the vehicle, Ally Bank sold it at auction in July 2025, for $12,600. (Dkt. 31-2 at ¶ 51; Dkt. 33 at ¶ 51; Dkt. 32-20 at ¶ 64; Dkt. 37-1 at ¶ 64). After the auction, Ally Bank sent the buyers notices identifying the vehicle's sale proceeds and the remaining deficiency balance under the installment contract. (Dkt. 32-20 at ¶ 64; Dkt. 37-1 at ¶ 64). The notices reflected sale proceeds of $12,600 and a deficiency balance of $29,607.64. (Dkt. 31-2 at ¶ 51; Dkt. 33 at ¶ 51; Dkt. 32-20 at ¶ 66; Dkt. 37-1 at ¶ 66).

The J.D. Power Used Car Guide reported an average auction value of $16,750 for the vehicle as of the week of June 22, 2023. (Dkt. 31-2 at ¶¶ 52-53; Dkt. 33 at ¶¶ 52-53). Ally Bank relies on that valuation in calculating its claimed damages of $4,150, not including interest. (Dkt. 31-2 at ¶ 54; Dkt. 33 at ¶ 54).

## DISCUSSION

### I. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the non-moving party, it finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not

rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Where, as here, there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## II. Fifth Amendment Takings Claim

Ally Bank claims the City took its property for a public use without just compensation in violation of § 1983 and the Fifth Amendment.[2] The Fifth Amendment's Takings Clause provides that no private property "shall . . . be taken for public use, without just compensation." U.S. Const. Amend. V. "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). The protection "is designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn*

---

[2] The Fifth Amendment's Takings Clause applies to state actors through the Fourteenth Amendment. *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001).

*Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978) (citation modified) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)). "[A] property owner may bring a Fifth Amendment claim under § 1983" when a government "takes property without compensation." *Knick v. Township of Scott, Pa.*, 588 U.S. 180, 202 (2019).

The Supreme Court has recognized two types of takings: physical takings and regulatory takings. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 324-25 (2002). A physical taking is an appropriation of property by the government for public use. *See id.* at 323. "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner" even if that use is "temporary." *Id.* at 322. "Government action that physically appropriates property is no less a physical taking because it arises from a regulation." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021).

A regulatory taking, in contrast, occurs "where even absent a direct physical appropriation, governmental regulation of private property 'goes too far' and is 'tantamount to a direct appropriation or ouster.'" *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014) (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005)). Although "property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*, 482 U.S. 304, 316 (1987) (quoting *Penn. Coal Co. v. Mahon,* 260 U.S. 393, 415 (1922)). "When a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on "a complex of factors," including "(1) the economic impact of the

regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017); *see also Cablevision Sys. Corp. v. F.C.C.,* 570 F.3d 83, 98-99 (2d Cir. 2009) (quoting *Penn Cent.,* 438 U.S. at 124). A plaintiff seeking to show a regulatory taking has a "heavy burden." *Cablevision Sys.,* 570 F.3d at 99.

> Whichever form the alleged taking assumes, to succeed in establishing a constitutional violation claimants must demonstrate: (1) that they have a property interest protected by the Fifth Amendment, (2) that they were deprived of that interest by the government for public use, and (3) that they were not afforded just compensation.

*Ganci v. N.Y.C. Transit Auth.,* 420 F. Supp. 2d 190, 195 (S.D.N.Y. 2005), *aff'd,* 163 Fed. App'x 7 (2d Cir. 2005).

As to the first factor, Ally Bank's "security interest is indisputably a property interest," *Ford Motor Credit Co. v. NYC Police Dep't*, 503 F.3d 186, 191 (2d Cir. 2007), and is protected by the Fifth Amendment, *see Mercedes-Benz Fin. Servs. USA, LLC v. City of New York*, 770 F. Supp. 3d 643, 661 (S.D.N.Y. 2025) ("Plaintiff's security interest in the Vehicle was a property interest to which the Fifth Amendment applies."). But whether a taking has occurred turns, in part, on whether Ally Bank has alleged a regulatory or physical taking. In response to the City's argument that neither type of taking occurred, Ally Bank fails to specify the takings theory on which it pursues its Fifth Amendment claim. (*See* Dkt. 37 at 24-25 (responding to City's summary judgment motion on the takings claim but failing to address whether the taking was regulatory or physical)). Thus, the Court addresses each type of claim—and concludes that no rational jury could find a taking under either scenario.

### A. Regulatory Taking

Ally Bank fails to specify that its Fifth Amendment claim is based on an alleged regulatory taking, and it does not even attempt to engage in the required balancing analysis under *Penn Central*. By contrast, the City has met its burden to show that no rational jury could conclude that the vehicle's seizure constituted a regulatory taking. (*See* Dkt. 32-21 at 13-15). The economic impact weighs against Ally Bank. While the seizure was not short-lived, once the vehicle was released Ally Bank sold the vehicle at auction, the City imposed no fees, and the deficiency owed to Ally Bank by the buyers after the auction was "roughly equivalent to the amount of credit" they had been provided initially. (Dkt. 32-21 at 13). In other words, as argued by the City, "[t]he undisputed material facts demonstrate that Ally [Bank] successfully repossessed the vehicle and sold it subject to its lien without incurring any fees from the City, and seemingly without losing a significant amount of money." (*Id*. at 13-14).

In addition, Ally Bank "cannot claim that it entered into the installment contract 'in reliance on a state of affairs that did not include' the potential that the [v]ehicle might be seized and temporarily detained." *Mercedes-Benz Fin. Servs. USA, LLC*, 770 F. Supp. 3d at 663 (quoting *74 Pinehurst LLC v. New York*, 59 F.4th 557, 567 (2d Cir. 2023)). And the character of the government action weighs heavily against Ally Bank—a seizure pursuant to a judicial search warrant and for purposes of enforcing the criminal law.

Thus, even if Ally Bank was proceeding under the theory of a regulatory taking, which is not at all clear, its claim would fail as a matter of law—it has not even attempted to meet its "heavy burden" of establishing such a taking.

**B. Physical Taking**

A physical taking occurs when the government physically acquires private property for a public use, such as by using its power of eminent domain to formally condemn property, physically taking possession of property without acquiring title to it, or otherwise occupying property. *See Cedar Point*, 594 U.S. at 147-48. "These sorts of physical appropriations constitute the 'clearest sort of taking,'" and in such instances, a per se taking rule applies: "The government must pay for what it takes." *Id.* at 148 (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001)). In addition, "[g]overnment action that physically appropriates property is no less a physical taking because it arises from a regulation." *Id.* at 149. The key inquiry, the Supreme Court noted, is "whether the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property" *id.* (citing *Tahoe-Sierra*, 535 U.S. at 321-323), finding that "[w]henever a regulation results in a physical appropriation of property, a *per se* taking has occurred, and [the balancing test set forth in] *Penn Central* [for assessing a regulatory taking] has no place," *id.*

Of course, this case does not involve application of eminent domain. Rather, the City seized the vehicle pursuant to a search warrant; the City impounded the vehicle to conduct the search and held the vehicle as evidence in the criminal proceeding; and the City held the vehicle for approximately two years until it was released. (Dkt. 31-2 at ¶¶ 16, 20; Dkt. 37-1 at ¶¶ 7-8, 14, 50). Under the circumstances, where the City's possession and retention of the vehicle was pursuant to a validly issued search warrant and held for purposes of a criminal action, as a matter of law a taking did not occur.

Ally Bank focuses on the municipal policy—the City's General Order 511. This provides that the RPD may retain a vehicle as evidence until such time that it is "released by the Evidence Technician, the member that put the hold on the vehicle or at the request of the District Attorney's Office." (Dkt. 31-3 at 107). Under the policy, this is the only available process for releasing a vehicle held as evidence. (*Id.*). Ally Bank claims that General Order 511's application to the vehicle destroyed its protected right to possess the vehicle and excluded all others from the vehicle. According to Ally Bank, the seizure of the vehicle was "in furtherance of" General Order 511 and the taking of its rights was an "integral part" of General Order 511. (Dkt. 31-1 at 26). In other words, General Order 511 is the underlying basis for the City's appropriation of Ally Bank's rights.

But the law is clear a "government-authorized physical invasion[]" is not a taking if it is "consistent with longstanding background restrictions on property rights." *Cedar Point*, 594 U.S. at 160-61. These "background limitations" include the "traditional common law privileges" to access property for purposes of enforcing the criminal law or conduct a search consistent with the Fourth Amendment. *Id*. Thus, "the seizure of property for use as evidence in a criminal matter is a valid exercise of a state's police power." *Maxineau v. City of New York*, No. 11-CV-02657-ENV-LB, 2013 WL 3093912, at *6 (E.D.N.Y. June 18, 2013).

In other words, "[w]hen property has been seized pursuant to the criminal laws . . . such deprivations are not 'takings' for which the owner is entitled to compensation." *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006) (citation modified); *see also Bennis v. Michigan,* 516 U.S. 442, 452 (1996) ("The government may

not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."); *Johnson v. Manitowoc County*, 635 F.3d 331, 336 (7th Cir. 2011) (property taken pursuant to search warrant constituted actions under the state's police power and thus "Takings Clause claim is a non-starter"); *Wilson v. Cnty. of Suffolk*, No. 21-CV-3716, 2025 WL 2987496, at *9 (E.D.N.Y. Oct. 23, 2025) (holding that seizure of a plaintiff's firearms were not for "public use" but instead "the seizure was an invocation of police power" (citation modified)). Here, there is no genuine dispute that the vehicle was seized and searched pursuant to a valid warrant. Nor is there any dispute that the City's actions were an exercise of the City's police powers. As a result, no rational factfinder could conclude that the City's actions constituted a compensable taking.

## III. <u>Fourth Amendment Unreasonable Seizure Claim</u>

With respect to the search, the parties agree that the search was reasonable based on a valid warrant and that it was reasonable to relocate the vehicle to conduct the search elsewhere. (See Dkt. 31-1 at 25 (Ally Bank stating that it does "not contest that it may have been reasonable for Rochester to move the Vehicle to a secure location in order to safely perform that search.")); *see United States v. Ponce*, 947 F.2d 646, 651 (2d Cir. 1991) (recognizing that the Supreme Court "has noted that when police have probable cause to search a particular automobile for particular articles, one of the options open to them is to seize the car and hold it" (quoting *Chambers v. Maroney*, 399 U.S. 42, 51 (1970))); *see also Reynolds v. McCoon*, No. 14-CV-255, 2016 WL 7229131, at *3 (W.D.N.Y. Dec. 14, 2016) (where a valid warrant authorized search of entire vehicle, "such warrant also

authorizes seizure of the vehicle"). Thus, the issue is whether the City violated Ally Bank's Fourth Amendment rights by its continued retention of the vehicle after the initial search and seizure.

Ally Bank's challenge to the continued retention of the vehicle under the Fourth Amendment fails as a matter of law. The Second Circuit has explicitly concluded that if "an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure." *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004) (citing *United States v. Jakobetz*, 955 F.2d 786, 802 (2d Cir. 1992)). Rather, "a seizure claim based on . . . unlawful retention [is] too novel a theory to warrant Fourth Amendment protection." *Id.* The Second Circuit more recently reaffirmed this holding in *Bennett v. Dutchess County*, 832 F. App'x 58 (2d Cir. 2020), clarifying that "[t]o the extent the Constitution affords . . . any right with respect to a government agency's retention of lawfully seized property, it would appear to be procedural due process." *Id*. at 60 (quoting *Shaul*, 363 F.3d at 187); *see also Vasquez v. Warren*, 630 F. Supp. 3d 524, 543 (S.D.N.Y. 2022) ("To the extent the Constitution affords any right with respect to a government agency's retention of lawfully seized property, it would appear to be procedural due process." (quoting *Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012)). Based on this precedent, courts within this Circuit have rejected Fourth Amendment challenges to the continued retention of lawfully seized vehicles. *See*, *e.g.*, *Mercedes-Benz Fin. Servs. USA, LLC*, 770 F. Supp. 3d at 664; *Santander v. City of Yonkers*, No. 22-CV-8870 (KMK), 2024 WL 4817649, at *7-8

(S.D.N.Y. Nov. 18, 2024); *Santander v. Port Auth. of N.Y. & N.J.*, 20-CV-1997 (MKB), 20-CV-1998 (MKB), 2023 WL 12028907, at *5-6 (E.D.N.Y. Dec. 4, 2023).

Ally Bank attempts to escape *Shaul* and its progeny by arguing that its holding was effectively abrogated by *Krimstock v. Kelly*, 464 F.3d 246 (2d Cir. 2006) ("*Krimstock III*"). Ally Bank asserts that *Shaul*, which was based on a negligence theory for the failure to return personal property, is easily distinguishable because it "has nothing to do with property detained as evidence" (Dkt. 37 at 20), and instead *Krimstock III* "govern[s] vehicles detained for evidence" (*id*. at 21). In *Krimstock III*, the court evaluated the constitutionality of a prosecutor's unilateral decision to retain a vehicle as evidence pursuant to a *warrantless* arrest without neutral review of that decision. *Krimstock III*, 464 F.3d at 248. Ally Bank's argument is that under *Krimstock III* neutral review of a prosecutor's decision to retain a vehicle as evidence is required. However, the Second Circuit arrived at this conclusion after balancing the factors set forth in *Mathews v. Eldridge,* 424 U.S. 319 (1976), under a Fourteenth Amendment *due process claim*. *Id*. at 255. The court's holding relevant to the Fourth Amendment cause of action was that review by a neutral factfinder to continue impounding a vehicle as evidence after a *warrantless* seizure and before forfeiture proceedings need not be a "full-dress adversarial hearing." *Id*. at 253. This holding "does nothing to undermine *Shaul*." *Tammaro v. City of New York*, No. 13CV6190, 2018 WL 1621535, at *10 (S.D.N.Y. Mar. 30, 2018) (rejecting similar attempt to argue that *Krimstock III* implicitly abrogated *Shaul*'s Fourth Amendment holding). In other words, in this case, the neutral review already occurred before issuance of the search warrant. *See Bennett*, 832 F. App'x at 60 (distinguishing

property seized based on a warrantless arrest, as in *Krimstock*, from a seizure claim based on unlawful retention of property where there was no dispute that initial seizure was reasonable; under latter scenario there is no Fourth Amendment claim). With no dispute over the reasonableness of the initial search and seizure, binding Second Circuit precedent precludes Ally Bank's Fourth Amendment claim.

For these reasons, the City's motion as to the Fourth Amendment claim is granted and Ally Bank's motion is denied.

## IV. Fourteenth Amendment Procedural Due Process Claim

The Due Process Clause of the Fourteenth Amendment was "intended to secure the individual from the arbitrary exercise of the powers of government . . . [and] serves to prevent governmental power from being used for purposes of oppression." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (citation modified). To succeed on a due process claim, a plaintiff must establish that "he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994). "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ v. Loudermill*, 470 U.S. 532, 542 (1985) (citation modified).

"To evaluate whether a plaintiff received due process, one of two standards may apply. If the deprivation is the result of 'unauthorized acts by state employees,' the Fourteenth Amendment is not violated 'so long as the State provides a post-deprivation remedy.' If the deprivation 'occurs in the more structured environment of established state

procedures, rather than random acts, the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process.'" *Langton v. Town of Chester*, 168 F. Supp. 3d 597, 606 (S.D.N.Y. 2016) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.,* 101 F.3d 877, 880 (2d Cir. 1996)). Instead, in such cases, the Court considers the adequacy of the pre-deprivation procedures, taking into account:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335; *see also Chase Grp. All. LLC v. City of N.Y. Dep't of Fin*., 620 F.3d 146, 150 (2d Cir. 2010). "The distinction between random and unauthorized conduct and established state procedures, however, is not clear-cut." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465-66 (2d Cir. 2006). The Second Circuit has held that "the acts of high-ranking officials who are 'ultimate decision-maker[s]' and have 'final authority over significant matters,' even if those acts are contrary to law, should not be considered 'random and unauthorized' conduct for purposes of a procedural due process analysis." *Id.* (quoting *Velez v. Levy*, 401 F.3d 75, 91-92 & n. 14 & 15 (2d Cir. 2005)); *see Moulton v. Cnty. of Tioga, New York*, No. 3:22-CV-00340 (AMN/ML), 2024 WL 4836608, at *10 (N.D.N.Y. Nov. 20, 2024) ("Conduct cannot be considered random and unauthorized, regardless of whether the acts are contrary to state law if: (1) the state delegated to those actors the power and authority to effect the very deprivation complained of . . . [and] the concomitant duty to initiate the procedural safeguards set up by state law,

or (2) the deprivation resulted from the acts of high-ranking officials who are ultimate decision-maker[s] and have final authority over significant matters." (citation modified)).

Before proceeding to the due process analysis, it is useful to address two threshold elements of a due process claim: a protected property interest and a deprivation attributable to the City. The parties agree that Ally Bank possessed a property interest protected by the Fourteenth Amendment. (Dkt. 34-1 at 22). The property interest is derived from Ally Bank's perfected lien on the vehicle. "A secured creditor has two rights: the *contractual* right to repayment of the debt owed and the *property* right to the collateral that secures the debt in the event of non-payment." *Ford Motor Credit*, 503 F.3d at 191 (citing *Armstrong v. United States,* 364 U.S. at 46). Under Ally Bank's installment contract with the buyers, Ally Bank held a right to repossess the vehicle in the event of default. There is no dispute for the purposes of this motion that the buyers were in default under the installment contract. (Dkt. 31-2 at ¶ 9; Dkt. 33 at ¶ 9; Dkt. 34-1 at 22).

The precise alleged deprivation is less clear. In its complaint, Ally Bank states that it has been deprived of its property interest through the City's actions. (Dkt. 1 at ¶ 46). According to the complaint, the City's actions include the initial seizure of the vehicle and the City's decision to continue to hold the vehicle as evidence "after the initial reason for the seizure has passed." (*Id*. at ¶ 28). Ally Bank asserts that the initial reason for the seizure was to search the vehicle, not to hold it as evidence. (*Id.* at ¶ 29; Dkt. 31-1 at 25). In its motion papers, Ally Bank continues to refer to the City's actions "relating to Rochester's evidence 'hold' and detention of the [v]ehicle" (Dkt. 31-1 at 19), but also focuses on the City's continued interference with its property right through its retention of

the vehicle without a hearing after the initial probable cause determination evidenced by the warrant.

### A. Process Due to Ally Bank

Given Ally Bank's protected property interest and deprivation at the hands of the City, the Court must determine what process Ally Bank was due before it could be deprived of its interest. *Kapps v. Wing*, 404 F.3d 105, 118 (2d Cir. 2005). The Supreme Court and the Second Circuit have recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Francis v. Fiacco*, 942 F.3d 126, 142-43 (2d Cir. 2019) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)); *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982) (acknowledging that due process "will depend on appropriate accommodation of the competing interests involved" (citation modified)); *Black v. Decker*, 103 F.4th 133, 148 (2d Cir. 2024) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (citation modified)); *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (citation modified)).

The City argues that it was not required to provide pre-deprivation notice and opportunity to be heard because the seizure was executed upon a judicial warrant. Ally Bank does not claim otherwise. And the Court agrees. "[A] search warrant is generally issued to serve a highly important governmental need—e.g., the apprehension and conviction of criminals. . . . [A] search warrant is generally issued in situations demanding prompt action. The danger is all too obvious that a criminal will destroy or hide evidence

or fruits of his crime if given any prior notice. . . ." *Fuentes v. Shevin,* 407 U.S. 67, 93-94 n. 30 (1972). Thus, in limited circumstances—such as a warranted seizure—"immediate seizure of a property interest, without opportunity for prior hearing, is constitutionally permissible." *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 678 (1974). Where the pre-deprivation process is "impracticable," a violation of the procedural due process requirements does not occur if adequate state post-deprivation remedies are available. *See Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *see also Best v. Monaco*, No. 09-CV-05260, 2010 WL 1438756, *1 (E.D.N.Y. Apr. 5, 2010) ("In the context of property seized pursuant to a search warrant, adequate postdeprivation remedies satisfy procedural due process"). This is especially true where, as here, the property seized is mobile and could be readily moved, hidden, or destroyed if the owners or subjects of the investigation are given any advance notice. *See Fuentes*, 407 U.S. at 93 n.30.

Relatedly, the Second Circuit in *Krimstock v. Kelly*, 306 F.3d 40, 67 (2d Cir. 2002), *abrogated by Culley v. Marshall*, 601 U.S. 377 (2024) ("*Krimstock I*"), required a post-seizure, pre-forfeiture-hearing opportunity to be heard. Then, in the context of vehicles seized as evidence, the court also required a post-deprivation *Krimstock* hearing to ensure a meaningful opportunity to be heard. *Krimstock III*, 464 F.3d at 255. In *Krimstock III*, the court balanced the *Mathews* factors to find that in the context of a vehicle seized as evidence, "review by a neutral fact-finder of a prosecutor's decision to retain a vehicle as potential evidence" is required, "although no adversarial hearing is required." *Krimstock III*, 464 F.3d at 255. Yet the *Krimstock* cases arose as challenges to warrantless seizures under New York City's forfeiture statute, not in the context of a seizure pursuant to a

judicially authorized search warrant. That said, the Court will assume that the *Krimstock* requirements for a prompt post-deprivation hearing apply to the circumstances of this case, and that Ally Bank was entitled to meaningful notice and opportunity to be heard post-deprivation.

**B. Post-Deprivation Remedies**

Ally Bank asserts a due process violation pursuant to established state procedure because General Order 511 contains no hearing procedure to address the vehicle hold and the City's custom is to not provide a hearing. It is undisputed that General Order 511 is an established policy for the City's vehicle towing, storage, and seizure. (Dkt. 32-20 at ¶ 16; Dkt. 37-1 at ¶ 16). It is also undisputed that General Order 511 does not expressly provide an opportunity to be heard. (Dkt. 31-2 at ¶ 42; Dkt. 33 at ¶ 42). Ally Bank is correct that "some form of hearing" is required before it was deprived of its property interest. *Mathews*, 424 U.S. at 333; *HVT, Inc. v. Port Auth. of New York & New Jersey*, No. 15-CV-5867 (MKB)(VMS), 2018 WL 3134414, at *9 (E.D.N.Y. Feb. 15, 2018) ("[T]he question is whether Defendant can summarily deprive Plaintiff of its property without any opportunity for a hearing. The law is quite clear that it cannot."), *report and recommendation adopted,* 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018); *see also Propert v. Dist. of Columbia*, 948 F.2d 1327, 1332 (D.C. Cir. 1991) ("[T]he amount of process required can never be reduced to zero—that is, the government is never relieved of its duty to provide . . . *some* opportunity to be heard prior to final deprivation of a property interest." (emphasis in original)). However, when the deprivation occurs in the course of an "established state procedure," due process is satisfied by the "combination" of "some form of pre-deprivation

hearing" and a "post-deprivation remedy" with "the opportunity to obtain full judicial review." *Rivera-Powell,* 470 F.3d at 466-67; *see also Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009) ("[L]ack of such pre-deprivation process will not offend the constitutional guarantee of due process, provided there is sufficient post-deprivation process." (citation modified)).

Where, as here, a pre-deprivation hearing is impracticable and thus not required, the Court must look to the adequacy of the state's post-deprivation remedies available under the balancing framework established in *Mathews*, 424 U.S. at 335. Those factors are: (i) the private interest affected by official action; (ii) the risk of erroneous deprivation under existing procedures and probable value of additional or substitute safeguards; and (iii) the government's interest. *Id*. at 335.

**1. Ally Bank's Private Interest**

Ally Bank's interest in the vehicle's value as lienholder is "considerable," even if it is "not as great as the interest of the vehicle's owner in possession of a seized vehicle." *See Ford Motor Credit*, 503 F.3d at 194. Ally Bank's interest is pecuniary because it was entitled to monthly payments under the installment contract, or in the event of default repossession of the vehicle to resell it, not use it as transportation. Ally Bank's private interest, while considerable, is minimized because its business is to take assignments of installment contracts for vehicles and hold liens in the vehicles to secure contractual payments. (Dkt. 31-2 at ¶ 1; Dkt. 33 at ¶ 1). This interest pales in comparison to parties who have been deprived of their mode of transportation or a property interest necessary to one's livelihood. *See, e.g.*, *Nnebe v. Daus*, 931 F.3d 66, 84 (2d Cir. 2019) ("[T]his factor

favors more extensive process where the interest at stake is operating a business and . . . pursuing a particular livelihood." (citation modified)); *Spinelli*, 579 F.3d at 160 (finding first *Mathews* factor favored plaintiff where deprivation impacted ability to operate business); *Krimstock I*, 306 F.3d at 61 ("The particular importance of motor vehicles derives from their use as a mode of transportation and, for some, the means to earn a livelihood.").

**2. Risk of Erroneous Deprivation Under Existing Procedures**

Ally Bank contends that the risk of erroneous deprivation under General Order 511 could not be higher because the City provides no procedural safeguards concerning the seizure of vehicles as evidence and provides no *Krimstock* hearing to challenge the continued detention of the vehicle. The City contends it provided adequate notice to Ally Bank in the form of the tow letter and adequate remedies were available to Ally Bank to contest the alleged deprivation.

*a. Notice*

Under General Order 511 § V(C), impound lot personnel must notify the registered owner, title owner, and/or lienholder of the RPD's possession of the vehicle by certified mail. (Dkt. 32-20 at ¶ 22; Dkt. 37-1 at ¶ 22; Dkt. 31-2 at ¶ 44; Dkt. 33 at ¶ 44; Dkt. 31-3 at 109). Impound lot personnel customarily generate and send these letters on the day the vehicle is seized. (Dkt. 32-20 at ¶ 26; Dkt. 37-1 at ¶ 26). It is undisputed that the City's impound lot personnel followed this procedure for the vehicle, sending the letter on June 22, 2023—the day the vehicle was seized and held. (Dkt. 32-20 at ¶¶ 25-26; Dkt. 37-1 at ¶¶ 25-26; Dkt. 31-2 at ¶ 19; Dkt. 33 at ¶ 19; Dkt. 31-3 at 16). It is also undisputed that Ally

Bank received the letter and thereby notice of the seizure on June 30, 2023. (Dkt. 32-20 at ¶ 27; Dkt. 37-1 at ¶ 27). The parties agree that the letter Ally Bank received included that the vehicle was seized and currently under a hold and did not refer to any available hearing procedure. (Dkt. 31-2 at ¶¶ 19, 21; Dkt. 33 at ¶¶ 19, 21; Dkt. 32-20 at ¶ 28; Dkt. 37-1 at ¶ 28).

Ally Bank contends that the City's failure to provide notice of any hearing is per se unconstitutional. The contention appears to be that Ally Bank is entitled to explicit notice of a hearing—not just notice of the seizure. (Dkt. 37 at 14). The Court disagrees.

Due process includes reasonable notice **and** an opportunity to be heard. *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (emphasis added). The Supreme Court in *City of W. Covina v. Perkins* held that because the "primary purpose" of the notice requirement is to "ensure that the opportunity for a hearing is meaningful," then "[i]t follows that when law enforcement agents seize property pursuant to warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." 525 U.S. 234, 240 (1999). "When the police seize property for a criminal investigation, however, due process does not require them to provide the owner with notice of state-law remedies." *Id*. at 240.

Consistent with *City of W. Covina*, the City only had to provide notice that the vehicle was seized, that it was being held, and that the vehicle was impounded with the RPD—which the tow letter provided. Ally Bank's attempts to expand the notice requirement to mandate that the notice explicitly reference an opportunity to be heard "lacks support in [Supreme Court] case law and mandat[ing] notice not now prescribed by

the Federal Government or by any of the 50 States." *Id*. at 239. Rather, the Supreme Court has held that only notice of who seized the property is required "because the property owner would have no other reasonable means of ascertaining who was responsible for his loss." *Id*. at 241.

In other words, "[t]he federal procedural due process guarantee does *not* require state officials to inform individuals of all the procedural guarantees they enjoy under state law." *Krick v. Town of Lyons, New York*, No. 6:24-CV-06178 EAW, 2024 WL 2240088, at *7 (W.D.N.Y. May 17, 2024) (quoting *Liberian Cmty. Ass'n v. Lamont*, 970 F.3d 174, 192 (2d Cir. 2020) (emphasis original)). Nor does it require "individualized notice of state-law remedies which . . . are established by published, generally available state statutes and case law." *City of W. Covina*, 525 U.S. at 241.

Ally Bank's right to challenge the propriety of towing the vehicle incident to arrest is provided in conjunction with General Order 511 in the policies and procedures set forth in § 111-72(H)(4) of the Rochester City Code, which is described in detail in the City's Code and on the City's website.[3] Ally Bank also had the option of filing a proceeding under Article 78 of the New York Civil Practice Law and Rules ("Article 78") or New York Criminal Procedure Law § 690.55 ("N.Y. Crim. Proc. § 690.55"), both publicly available state statutes, to challenge both the seizure and the continued retention of the

---

[3] As noted below, the Court cannot resolve on this record whether the hearing procedures set forth in § 111-72(H) would apply to the retention of the vehicle, as opposed to the towing of the vehicle. But this does not alter the Court's analysis on the adequacy of the notice, which did not need to set forth the available remedies under state or local law.

vehicle.[4] "Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him." *City of W. Covina*, 525 U.S. at 241. Thus, the failure to identify the particular policy or regulation governing the seizure, retention, or return of seized property does not, without more, render the notice constitutionally deficient.

Ally Bank's cited cases for the proposition that there is mandated minimal information required, do not in fact establish this mandate. Rather, they provide a gloss to *City of W. Covina's* holding in specific factual circumstances not relevant here, and do not establish details that must be included in a notice of seizure. *See Brody v. Vill. of Port Chester*, 434 F.3d 121, 127-29 (2d Cir. 2005) (failure to provide adequate notice under New York's Eminent Domain Procedure Law to condemnee); *Nnebe*, 931 F.3d at 88-90 (failure to provide adequate notice of what standard would apply at hearings to challenge to summary deprivation of taxi licenses under New York City ordinance); *Spinelli*, 579 F.3d at 171-72 (failure to provide adequate notice where regulation required inclusion of misconduct leading to the suspension of gun license).

Here the evidentiary record confirms that no due process violation occurred in connection with the City's notice of seizure and hold, particularly where the notice was sent the same day as the seizure and provided the requisite information for Ally Bank to be aware of who seized and impounded the vehicle. The availability of published and easily

---

4 In addition, if property is held pursuant to a federal criminal investigation, Federal Rule of Criminal Procedure 41(g) provides an avenue for a motion to be filed seeking return of the property.

accessible state-level post-deprivation procedures supports that no violation occurred. Thus, Ally Bank received the notice of seizure it was due under the Fourteenth Amendment.

*b. Seizure and Evidence Hold*

Ally Bank contends that the risk of deprivation is unacceptably high because no procedural remedy exists to challenge the initial seizure and detention of the vehicle as evidence. Ally Bank's position is based on a selective view of the law and facts. Ally Bank asserts that no post-deprivation *Krimstock* or other opportunity to be heard was initiated by the City and that the City's proffered remedies are either inadequate or irrelevant. Conversely, the City contends that state and city law provide a meaningful opportunity to be heard on the seizure and impoundment, sufficient to reduce the risk of error in scenarios where vehicles are seized and held as evidence under General Order 511. The City also offers Article 78, N.Y. Crim. Proc. § 690.55, and § 111-72(H), discussed below, as the post-deprivation remedies available to Ally Bank to challenge the City's continued retention.

Section 111-72(H) is found in City Code Chapter 111 "Vehicle and Traffic," Article I "Traffic Ordinance," Section 111-72 "Illegal parking and towing of vehicles." The parties do not contest that the hearing procedures provided under § 111-72(H), including review by a neutral factfinder and ability to present evidence (Dkt. 32-30 at ¶¶ 37-40, 43-46; Dkt. 37-1 at ¶¶ 37-40, 43-46), could be an adequate remedy to challenge the City's towing of a vehicle. However, Ally Bank contends that § 111-72 does not apply to vehicles seized as evidence, only vehicles seized for parking or traffic violations citing to § 111-

72(A) and § 111-72(B). (Dkt. 37-1 at ¶ 29). Ally Bank's position ignores the express language of § 111-72(B) allowing the City's law enforcement to impound "vehicles held for evidence or vehicles towed for safekeeping incident to an arrest[.]" Likewise, § 111-72(H)(4) includes reference to vehicles seized incident to arrest: "The authority of the hearing examiner shall be limited solely to determining whether there was probable cause for the towing . . . which probable cause shall include . . . towing for safekeeping incident to an arrest." Thus, § 111-72(H) applies to the initial seizure of the vehicle incident to arrest. But on this record the Court cannot conclude that § 111-72(H) applies to the holding of the vehicle as evidence. Indeed, the record appears to reflect that it is the City's policy and custom to allow an affected party to challenge only the towing of a vehicle. (*See, e.g.*, Dkt. 37-1 at ¶¶ 29, 31, 34-35, 41; Dkt. 34-1 at 30). This does not necessarily extend to the continued retention of a vehicle. Therefore, the Court cannot resolve on this record whether § 111-72(H) was available as a post-deprivation remedy to the City's retention of the seized vehicle.[5]

That said, § 111-72(H) is not the only post-deprivation remedy relied on by the City. Ally Bank had at least two additional opportunities to be heard with regard to the seizure and continued retention: Article 78 and N.Y. Crim. Proc. § 690.55. An Article 78

[5] Ally Bank challenges the City's reliance on a declaration from Jennifer Rodriguez, the City's Assistant Director of Parking, claiming that it contradicts the City's Fed. R. Civ. 30(b)(6) witness's testimony and therefore the Court should disregard the declaration. (Dkt. 37 at 13-14). The Court rejects Ally Bank's arguments because, among other things, it disagrees that the declaration is inconsistent with the portion of the testimony from the Rule 30(b)(6) deposition cited by Ally Bank. But even so, the Court is not resolving the summary judgment motions based on § 111-72(H), and therefore Ally Bank's arguments concerning the Rodriguez declaration are immaterial to the pending motions.

proceeding in New York State Supreme Court permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims. *Locurto v. Safir*, 264 F.3d 154, 173-75 (2d Cir. 2001) (citation modified). "An Article 78 proceeding provides the opportunity to review whether a body or officer 'failed to perform a duty enjoined upon it by law' or whether a specific act was 'made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion,' and permits the state court to remedy the violation by ordering a hearing or a return of the unlawfully seized property." *Beechwood Restorative Care Ctr. v. Leeds,* 436 F.3d 147, 156-57 (2d Cir. 2006). Courts in this Circuit regularly find an Article 78 proceeding is an adequate remedy in the post-deprivation context. *See, e.g.*, *Locurto,* 264 F.3d at 175 ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes."); *McMenemy v. City of Rochester*, 241 F.3d 279, 289 (2d Cir. 2001) ("[T]he availability of an Article 78 proceeding under New York law provided [the plaintiff] with an adequate post-deprivation remedy such that no procedural due process violation occurred[.]"); *Nolan v. Cnty. of Erie*, No. 19-CV-01245, 2020 WL 1969329, at *11 n.7 (W.D.N.Y. Apr. 24, 2020) ("Article 78 proceedings often constitute sufficient procedural due process foreclosing a § 1983 claim against municipalities."); *Miller v. Bazan*, No. 13-CV-993, 2015 WL 339533, at *4 (N.D.N.Y. Jan. 26, 2015) ("Article 78 proceedings have been used to recover property that police officers confiscated during a search or arrest."); *Chepilko v. City of New York,* No. 06-CV-5491 (ARR)(LB), 2012 WL 398700, at *11 (E.D.N.Y. Feb. 06, 2012) (Article 78 proceeding is an adequate post-deprivation remedy

if property is taken by the police and not returned voluntarily). Ally Bank does not contend that it ever attempted to bring an Article 78 challenge or that such remedy was unavailable to it.

Likewise, N.Y. Crim. Proc. § 690.55, governing property seized pursuant to a search warrant, provides an avenue to an opportunity to be heard. It provides, in pertinent part, that "[u]pon receiving property seized pursuant to a search warrant, the court must either (a) retain it in custody . . . or (b) direct that it be held in the custody of" the person or agency who applied for or executed the warrant. N.Y. Crim. Proc. § 690.55. Here, the warrant states that "any property seized pursuant hereto shall be returned and delivered to the Court without delay" (Dkt. 31-3 at 86), and there is no evidence of the issuing judge entering a retention order. Under New York law "property seized pursuant to a search warrant remains in the control of the issuing judge." *LM Bus. Assocs., Inc. v. State*, 124 A.D.3d 1215, 1217 (4th Dep't 2015) (establishing that warrant-seized property remains under judicial control and recognizes application to the warrant-issuing court as a way to seek its return) (citation modified). Again, Ally Bank does not allege any attempt to apply to the warrant-issuing court to seek return of the vehicle or explain why this option was not available.

Despite the obvious existence of these remedies, Ally Bank contends that the existence of post-deprivation remedies is "irrelevant" because the deprivation is the result of established municipal policy, not random and unauthorized acts. (Dkt. 37 at 16-17). But as previously discussed, the normal standard for deprivation resulting from established state procedure is not controlling here, where pre-deprivation remedies are impracticable

because of the criminal investigation and seizure pursuant to a judicial warrant. Thus, the Court must balance the *Mathews* factors to assess the adequacy of post-deprivation remedies. And here, the City cites to three viable avenues to challenge the seizure, with at least two plainly available to challenge the continued retention. Those options reduce the risk that Ally Bank was deprived of its property interest in error.

To the extent Ally Bank asserts that it was entitled to but did not receive a *Krimstock* review to justify further holding of the vehicle as evidence and that it was the City's burden to initiate the review, the *Krimstock* cases do not establish that the government must initiate such a review. In *Krimstock I*, the court held only that a claimant must be provided with the opportunity to challenge the seizure and the government must provide a mechanism to do so and not refuse to hold a hearing upon request. *Krimstock I*, 306 F.3d at 67. The purpose of the *Krimstock* hearing is to allow a claimant to "challenge the City's continued possession of [an individual's] vehicle during the pendency of legal proceedings where such possession may ultimately prove improper and where less drastic measures than deprivation *pendent lite* are available and appropriate." *Id.* at 44. In *Krimstock III*, where the court evaluated the adequacy of a *Krimstock* hearing in the context of a vehicle seized as evidence, the court held that due process required review of the reasonableness of the vehicle's continued retention. *Krimstock III*, 464 F.3d at 255. Again, the court did not mandate that the burden is on the government to initiate a review. Instead, the government must be permitted to seek retention orders *ex parte*. *Id*. at 255.

Ally Bank asserts that a policy—such as General Order 511 or the City's proposed remedies which shift the burden onto the claimant to take action to retrieve its property—

is unconstitutional. This is incorrect. Ally Bank relies on *McClendon v. Rosetti*, 460 F.2d 111 (2d Cir. 1972) in support of its argument, but *McClendon* references the criticisms of a specific ordinance not relevant here—specifically the critique concerning the circumstances where a claimant must prove title to challenge a seizure. 460 F.2d 111, 115-16, n. 4 (2d Cir. 1972). Nowhere does Ally Bank contend that it must "prove" title or status as a secured lienholder to challenge the continued retention of the vehicle. And the other cases relied on by Ally Bank discuss deprivation without any opportunity for a hearing but do not go as far as Ally Bank suggests. (Dkt. 37 at 17).

Ally Bank was free to challenge the continued retention of the vehicle as evidence through a *Krimstock* or other hearing. The Court finds that providing a hearing only upon request does not violate due process. Due process only requires the government to provide an *opportunity* for a hearing at a meaningful time and in a meaningful manner. *See Hadwan v. United States Dep't of State*, 139 F.4th 209, 225 (2d Cir. 2025) (quoting *Mathews*, 424 U.S. at 333). Therefore, requiring Ally Bank to initiate these remedies does not run afoul of the Due Process Clause.

**3. The City's Interest**

"[T]he government's interest in marshaling evidence is undoubtedly strong." *Krimstock III*, 464 F.3d at 255. Here, the vehicle was seized pursuant to a judicial warrant and held as evidence in an ongoing criminal investigation into narcotics trafficking. The City contends that its public safety imperative overwhelms Ally Bank's pecuniary interests. The Court agrees. As discussed above, Ally Bank's private interest, while considerable, is minimized because its business is to take assignments of installment contracts for vehicles

and hold liens in the vehicles to secure contractual payments—not to use the vehicle as transportation or to seek a particular livelihood. (Dkt. 31-2 at ¶ 1). The City's interest in maintaining and preserving potential evidence in a criminal investigation outweighs Ally Bank's pecuniary interest to repossess and sell the vehicle. The City also contests Ally Bank's assertion that the fiscal and administrative burdens on the government to include additional or substitute procedural requirements would be minimal. (Dkt. 34-1 at 32). The City states that providing redundant safeguards would be unreasonably burdensome. The Court finds this factor neutral to both parties because while it likely would not cause great burden on the City, the Court finds it unnecessary given the available post-deprivation remedies that provide a meaningful opportunity to be heard and exceed the requirements of *Krimstock III*.

In balancing the factors, Ally Banks's private interest in the value of the vehicle weighs in its favor, albeit only slightly. However, the risk of erroneous deprivation is not unacceptably high given the notice of seizure and post-deprivation hearing opportunities. Lastly, the City's interest on balance favors the City because of its strong interest in marshaling evidence as opposed to Ally Bank's pecuniary interest. In sum, the Court's *Mathews* analysis finds the City did not violate Ally Bank's due process rights because it provided adequate post-deprivation notice and opportunities to be heard.

For these reasons, the City's motion as to the Fourteenth Amendment claim is granted and Ally Bank's motion is denied.

**V. Declaratory Relief**

All that remains is Ally Bank's declaratory judgment claim. (*See* Dkt. 1 at 9-10; Dkt. 31-1 at 27-29). "It is well settled that a request for declaratory . . . relief is not an independent cause of action." *Bulson v. Town of Brunswick*, No. 24-CV-503, 2025 WL 743950, at *3 n.2 (N.D.N.Y. Mar. 7, 2025) (quoting *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 627 (E.D.N.Y. 2018)); *see also Chevron Corp v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (explaining that the Act "is procedural only . . . and does not create an independent cause of action") (citation modified). Thus, a request for declaratory relief "does not exist independent of a plausible underlying claim for relief." *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020) (quoting *Lisa Coppola, LLC v. Higbee*, No. 1:19-CV-678, 2020 WL 1154749, at *10 (W.D.N.Y. Mar. 10, 2020)). Ally Bank cannot maintain a cause of action for a declaratory judgment against the City in the absence of any substantive claims. Therefore, Ally Bank is not entitled to declaratory relief.

**CONCLUSION**

For the foregoing reasons, Defendant's cross-motion for summary judgment is granted as to all causes of action in the complaint, and Plaintiff's motion is denied. The Clerk of Court is directed to enter judgment in favor of Defendant and close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 30, 2026
Rochester, New York